This matter is before this court on a remand from the Supreme Court of Errors. Dirton
v. McCarthy, 149 Conn. 172 (1962). We understand that mandate to require this court to act anew on the plaintiff's "Motion to correct record by declaring action of court discontinuing case from docket a nullity and striking said discontinuance from said record." A-403 Rec. Briefs 5.
At the hearing following the remand, the court stated its understanding as above, with which counsel agreed. Thereupon, the plaintiff took the stand, offered testimony, and was cross-examined. This, with the record, is the sole evidence offered the court on the motion. Upon examination thereof in the light most favorable to the plaintiff's claims, the following facts appear. This complaint arose from an occurrence which took place 31 August 1956. Three days thereafter, the plaintiff visited Attorney Benjamin Paushter relative thereto. She had a second interview with him about a week later, and a third about a week following. The plaintiff last spoke with Paushter about a month and one-half after the accident, and has not seen him since that time. She did not return to see Paushter after that last visit to him because he told her it would be three years before her case would come up in court. Paushter also told her there would be no need to call him, and that he would notify her. *Page 386 
In September, 1960, the plaintiff read an article in the newspaper concerning several lawyers, Paushter's name being among them. This read that Paushter was being disbarred and that he had resigned from the bar. As a matter of fact, Paushter had resigned from the bar on 6 February 1959. The plaintiff thereupon went to Paushter's office and talked with his secretary. Later the same day, she visited the office of the clerk of this court. There she spoke to one of the staff, who told her that her case was in court, and asked if she had a lawyer, to which she replied, "No." The same person showed her a list of lawyers, from which she took the name of Attorney Schine. She thereupon visited the latter, who was about to leave on a vacation and turned the case over to Attorney Owens, of his office. On 9 September 1960, Attorney Schine's appearance for the plaintiff was entered, and the ensuing procedures which appear in the file were initiated.
The complaint herein was returnable on the first Tuesday of October, 1957. It was served 29 August 1957 and filed 24 September following. Thereafter, there is not a single docket entry until 6 May 1960, when the case was discontinued. This was followed by the appearance of 9 September 1960 and the subsequent events referred to above.
"It was essential for . . . [the plaintiff] to show that the situation complained of did not arise from her own or her attorney's negligence or inattention."Dirton v. McCarthy, supra, 173. What must be determined is whether or not the facts demonstrate diligence on the part of the plaintiff or her attorney. Id., 174. This court concludes that the plaintiff's attorney was, beyond question, negligent in high degree. Utter inaction in the case from the inception of the lawsuit to his resignation from the bar, a period of over seventeen months, cannot be *Page 387 
characterized in any less condemnatory terms. Furthermore, "[t]he negligence or inattention of an attorney is the negligence or inattention of the client." Hayden v. R. Wallace Sons Mfg. Co.,100 Conn. 180, 187 (1923); Jarvis v. Martin,77 Conn. 19, 21 (1904). We also determine that the plaintiff's complete inactivity relative to her lawsuit from her last visit to Paushter about the middle of October, 1956, to September, 1960, was signally negligent. This finding is not made without considering the mitigating factors claimed by her.
It is noted that from the date Paushter resigned from the bar to that of her retaining Attorney Schine, the plaintiff was, a fortiori, without an attorney to act for her, a fact of which she asserts ignorance. Nevertheless, this situation she could have remedied. It is obvious that the plaintiff is not illiterate. She resides in the city of Bridgeport, in whose newspapers she read the article which finally prompted her to take action, and in which Paushter's office was located. Her testimony is that she did not observe any notification of Paushter's predicament until September, 1960, or nineteen months after his actual resignation. A visit or telephone call to his office would have revealed it.
The court has considered the plaintiff's claim that Paushter told her it would be three years before her case would come up and that there would be no need to call him, as he would notify her. It has also occurred to this court that in leaving her lawsuit so completely in Paushter's hands, the plaintiff was but reposing in him that confidence in his integrity and ability which the announced standards of his profession invite. To penalize her for accepting, without qualification, that code to which the bar subscribes explicitly and tacitly is a step requiring reflective hesitation. That step is not easier to take because the particular member of that *Page 388 
profession she chose as the object of her trust proved so unworthy of it. This might be persuasive, given a lesser degree of passivity on her part. It is rejected in these premises. Even if taken at face value, this still leaves her with four years of inertia, a course incompatible with care or attention on her part. Hence, this mitigation does not amount to excuse, still less to that demonstration of diligence whose burden is the plaintiff's if she is to escape from the consequences of the situation.
Although it would be supererogatory to engage in lengthy discussion of antecedent cases involving similar issues, it should be pointed out that examination of them discloses similar conclusions reached on facts revealing far less negligent inaction than that of the present plaintiff. An example of this is to be found in Duncan v. Milford Savings Bank,134 Conn. 395 (1948), in which the opinion reads in part (p. 402): "`Equity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his counsel, unless the mistake is "unmixed with negligence," or . . . "unconnected with any negligence or inattention on the part of the [party]," or . . . "when the negligence of the party is not one of the producing causes."' Jarvis v. Martin, 77 Conn. 19,21 . . . The plaintiff and her attorney could not be so far absolved from inattention and negligence as to afford a basis for the equitable relief she claims." See also Palverari v. Finta, 129 Conn. 38,43 (1942), which held that equity "`will not relieve against the operation of judgments rendered through the negligence or inattention of the party claiming to be aggrieved or his attorney,'" quotingJarvis v. Martin, supra. "These decisions state our law authoritatively and conclusively. There is no occasion to trace the growth of this principle of our equity jurisprudence. Underlying it is the principle *Page 389 
of universal authority whose base is public policy, and is expressed in the maxim Interest reipublicaeut sit finis litium, which we denominated in Burritt
v. Belfy, 47 Conn. 323, 329, as the `embodiment of wisdom and justice.'" Hayden v. R. Wallace Sons Mfg. Co., supra.
 The plaintiff has not sustained her burden of showing that the discontinuance of this case did not arise from her own or her attorney's negligence or inattention. The motion is therefore denied.